IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

In re Application of

**JOINT STOCK COMPANY
RAIFFEISENBANK**

          Applicant,

pursuant to 28 U.S.C. § 1782 to issue
subpoenas upon SERGUEI BELOUSSOV for
the taking of a deposition and the production of
documents for use in a foreign proceeding.

Case No. 16-mc-24114- JEM

**MEMORANDUM OF LAW IN SUPPORT OF AN APPLICATION
FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
<u>TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 1

A.    THE PARTIES TO THE RUSSIAN PROCEEDINGS........................................................ 1

B.    THE BACKGROUND TO THE RUSSIAN PROCEEDINGS............................................. 3

C.    BELOUSSOV'S RELEVANCE TO THE RUSSIAN PROCEEDINGS............................ 5

LEGAL ARGUMENT ........................................................................................................... 8

A.    THE APPLICATION MEETS ALL THE STATUTORY REQUIREMENTS FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782 ............................................................ 8

    1.    RFB is an "Interested Person" Under 28 U.S.C. § 1782 ............................ 9

    2.    RFB Seeks Relevant Evidence "For Use In" a "Foreign Tribunal" .......................... 9

    3.    Beloussov Can be "Found" in this District............................................... 12

B.    ALL DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF PERMITTING THE DISCOVERY RFB SEEKS........................................................ 12

    1.    Beloussov is Not a Participant in the Russian Litigation ........................... 13

    2.    The Russian Courts Are Receptive to Discovery Pursuant to Section 1782 .............. 14

    3.    RFB's Application Does Not Represent an Effort to Circumvent Foreign Proof-Gathering Restrictions ......................................................... 15

    4.    The Discovery RFB Seeks is Neither Intrusive nor Unduly Burdensome ................. 16

CONCLUSION....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Consorcio Ecuatoriano de Telecom. S.A. v. JAS Forwarding (USA), Inc.*,
   747 F.3d 1262 (11th Cir. 2014) ........................................................................9

*Ecuadorian Plaintiffs v. Chevron Corp.*,
   619 F.3d 373, 377 (5th Cir. 2010) ...................................................................14

*Euromepa S.A. v. R. Esmerian, Inc*.,
   51 F.3d 1095 (2d Cir. 1995)..............................................................................14

*Fleischmann v. McDonalds*,
   466 F. Supp. 2d 1020, 1027 (N.D. Ill. 2006) .............................................14, 16

*In re Application of FG Wilson (Eng'g) Ltd*,
   No. 10-20839, 2011 WL 1114311 (S.D. Fla. Jan. 4, 2011)...................9, 11, 12, 15

*In re Application of Hill*,
   No. M19-117 (RJH), 2005 WL 1330769 (S.D.N.Y. June 3, 2005)...............9, 11, 12

*In re Application of Imanagement Services Ltd*,
   No. Civ. A05-2311 (JAG), 2006 WL 547949 (D.N.J. Mar. 3, 2006)...........10, 11, 14

*In re Application of Mesa Power Grp., LLC*,
   878 F. Supp. 2d 1296 (S.D. Fla. 2012) ........................................................11, 15

*In re Application of Setraco Nigeria Ltd*.,
   No. 3:13-mc-16-32MCR, 2013 WL 3153902 (M.D. Fla. June 19, 2013)................9

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)...............................................................................14

*In re Braga*,
   789 F. Supp. 2d. 1294 (S.D. Fla. 2011) ..............................................................8

*In re Chevron*,
   753 F. Supp. 2d 536 (D. Md. 2010)....................................................................13

*In re Clerici*,
   481 F.3d 1324 (11th Cir. 2007), *cert. denied*, 552 U.S. 1140 (2008) ..........8, 12, 13

**TABLE OF AUTHORITIES**

Page(s)

*In re Gemeinschaftspraxis*,
   No. Civ. M19-88, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006)......................................15, 16

*In re Honeywell Int'l, Inc. Sec. Litig.*,
   230 F.R.D. 293 (S.D.N.Y.2003) ............................................................................................11

*In re Imanagement Servs., Ltd.*,
   No. Misc. 05-89(FB), 2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005)....................................10

*In re Kolomoisky*,
   No. M19-116, 2006 WL 2404332 (S.D.N.Y. Aug. 18, 2006) ................................................14

*In re OOO Promnefstroy*,
   No. M 19–99 (RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ......................................14

*In re Pimenta*,
   942 F. Supp. 2d 1282 (S.D. Fla. 2013) .................................................................................13

*In re Pinchuk*,
   2014 WL 1745047 (S.D. Fla. Apr. 30, 2014) ........................................................................11

*In re Republic of Ecuador*,
   Case No. C-10-80225 MISC, 2010 WL 3702427 (N.D. Cal. Sept. 15, 2010) .........................8

*In re Request For Assistant From Ministry of Legal Affairs of
   Trinidad and Tobago*,
   117 F.R.D. 177 (S.D. Fla. 1987) ..........................................................................................14

*In re Sarrio S.A.*,
   173 F.R.D. 190 (S.D. Tex. 1995)...........................................................................................14

*In re Sveaas*,
   249 F.R.D. 96 (S.D.N.Y. 2008) ............................................................................................10

*In the Matter of Lancastor Factoring*,
   90 F.3d 38, 41 (2d. Cir. 1996) ............................................................................................9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)........................................................................................................ passim

## TABLE OF AUTHORITIES

**Page(s)**

*John Deere Ltd. v. Sperry Corp.*,
    754 F.2d 132 (3d Cir. 1985)..................................................................................14

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)........................15

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978)..........................................................................................11

*Sergeeva v. Tripleton Int'l Ltd.*,
    Case Nos. 15-13008 & 15-15066, 2016 WL 4435616
    (11th Cir. Aug. 23, 2016)....................................................................................9

*United Co. Rusal, PLC v. Trafigura A.G.*,
    No. 3:11MC17(SRU), 2011 WL 1045532 (D. Conn. Mar. 16, 2011)....................................10

STATUTES

28 U.S.C. § 1782.................................................................................................. passim

OTHER AUTHORITIES

Fed. R. Civ. P. 26(b)(1)....................................................................................10, 16

Bank Details, Raiffeisen Bank,
    *http://www.raiffeisen.ru/en/about/requisites/* (last visited Sept. 22, 2016) ...........................1

Ratings and Rankings, Raiffeisen Bank,
    *http://www.raiffeisen.ru/en/about/ratings/* (last visited Sept. 22, 2016) ................................1

Serguei Beloussov, Wikipedia,
    https://en.wikipedia.org/wiki/Serguei_Beloussov ....................................................5

Serguei Beloussov, Executive Profile and Biography, Bloomberg,
    http://goo.gl/QpO42M ........................................................................................5

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1782 ("**Section 1782**"), Applicant Joint Stock Company Raiffeisenbank ("**Applicant**" or "**RFB**") applies to this Court for an order authorizing it to conduct discovery on Respondent Serguei Beloussov ("**Beloussov**").  Section 1782 authorizes "[t]he district court of the district in which a person resides or is found [to] order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  The foreign proceedings underlying this action concern the insolvency and bankruptcy of a Russian corporate debtor and the related bankruptcies and debt collection proceedings against several other companies related to the debtor.  RFB was the lender on a USD 20 million loan to that debtor; it initiated the foreign proceedings to collect that defaulted loan; and it has been in sporadic communication with Respondent as the ultimate beneficiary of the debtor companies and the USD 20 million loan.

The statutory requirements are easily satisfied here.  According to public records, Beloussov can be found in this district.  RFB seeks testimony and documents from Beloussov for use in eight actions pending in Russia (the "**Russian Proceedings**").  RFB reasonably believes that Beloussov has documents and other information that may be highly relevant to the foreign proceedings.

## STATEMENT OF FACTS

### A.   THE PARTIES TO THE RUSSIAN PROCEEDINGS

Joint Stock Company Raiffeisenbank ("**RFB**") is a bank registered under the laws of the Russian Federation, with its registered address at 17 Troitskaya Street, Building 1, Moscow, 129090, Russia.  *See* Bank Details, Raiffeisen Bank, *http://www.raiffeisen.ru/ en/about/requisites/* (last visited Sept. 22, 2016).  RFB is one of the largest banks in Russia.  *See*

*Ratings and Rankings*, Raiffeisen Bank, *http://www.raiffeisen.ru/en/about/ratings/* (last visited Sept. 22, 2016).

RFB is the lender in the Loan Facility Agreement described below (*see infra* pp. 3-4). The nominal borrower is TV-Alliance LLC ("**TV-Alliance**"), one of the operational companies of the Rolsen Group with a registered address in Moscow, Russia. (*See* Raiffeisenbank Credit Review of Rolsen Group, attached to Declaration of Marina Bordakova, signed September 22, 2016 ("**Bordakova Decl.**"), as Ex. 1 at 10, attached to Declaration of Charles T. Kotuby, Jr. in Support of the Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings ("**Kotuby Decl.**") as Exhibit D.)  As part of ongoing insolvency proceedings against TV-Alliance in the Russian courts, RFB has become a significant creditor to the company.

The Rolsen Group is a conglomerate of companies that serves as a low-cost producer of household appliances in Russia.  (*See id.* at 1.)  The Rolsen Group is located in Kaliningrad, a Russian exclave and special economic zone between Poland and Lithuania on the Baltic Sea. (*See id.*)  TV-Alliance is the main operational company of Rolsen Group, but other entities fall within the Rolsen Group as well, including:

- Videofon OJSC ("**Videofon**"), a company registered under the laws of the Russian Federation, with a registered address in Voronezh, Russia. (*See* Raiffeisenbank Credit Review of Rolsen Group, attached to Bordakova Decl. as Ex. 1 at 12.)

- Vitta LLC ("**Vitta**"), a company registered under the laws of the Russian Federation, with a registered address in Moscow, Russia, which acts as an operational company of the Rolsen Group. (*See id.* at 16.)

- Sovershennaya Technika LLC ("**Technika**"), a company registered under the laws of the Russian Federation, with a registered address in Kaliningrad, Russia. (*See id.* at 13.)

- Vargis LLC ("**Vargis**"), a company registered under the laws of the Russian Federation, with a registered address in Moscow, Russia, an operational company of the Rolsen Group for supply agreements.  (*See id.* at 14.)

-2-

- Standard and Western Trading Inc. ("**SWT**"), a company incorporated and existing under the laws of the British Virgin Islands, an operational company of the Rolsen Group that enters into supply agreements with overseas suppliers.  (*See id.* at 15.)

All of these corporate entities are parties to the Russian Proceedings underlying this ancillary action for discovery.

### B.    THE BACKGROUND TO THE RUSSIAN PROCEEDINGS

On July 22, 2014, RFB entered into a Loan Facility Agreement with TV-Alliance (the "**Loan Agreement**") whereby RFB restructured its existing credit to the Rolsen Group and opened a credit line to TV-Alliance in the amount of up to USD19,850,000.  (*See* Declaration of Georgy Valeryevich Ugryumov signed September 15, 2016, ("**Ugryumov Decl.**"), ¶ 8, attached to Kotuby Decl. as Ex. B.)  As security for the loan, the following agreements were entered into between RFB and companies in the Rolsen Group:

- On July 22, 2014, RFB signed a floating charge over stock agreement with Vitta ("**Vitta Floating Charge Agreement**").  (*See* Ugryumov Decl., ¶ 8.b.).  The current assessed value of the goods pledged as determined in the Vitta Floating Charge Agreement is to be no less than RUB 594,633,529.19 (*Id.*) (USD 16,945,954.09 at the Central Bank of Russian exchange rate of as of July 22, 2014.) (*Id.*).

- On July 22, 2014, RFB signed a suretyship agreement with Sovershennaya Technika LLC ("**Technika Suretyship Agreement**"), the owner of a property complex in Kaliningrad.  (*See* Ugryumov Decl. ¶ 8.d.)  Pursuant to the Technika Suretyship Agreement, Technika guaranteed that TV-Alliance would fulfill its obligations under the Loan Agreement.  (*Id.*)

- On July 22, 2014, RFB signed a suretyship agreement with Vargis ("**Vargis Suretyship Agreement**").  (*See* Ugryumov Decl. ¶ 8.e.)  According to the Vargis Suretyship Agreement, Vargis guaranteed that TV-Alliance would fulfill its obligations under the Loan Agreement.  (*Id.*)

- On July 22, 2014, RFB signed a suretyship agreement with Standard and Western Trading Inc. ("**SWT Suretyship Agreement**").  (*See* Ugryumov Decl. ¶ 8.f.)  Pursuant to the SWT Suretyship Agreement, SWT guaranteed that TV-Alliance would fulfill its obligations under the Loan Agreement.  (*Id.*)

- On February 5, 2015, RFB signed a mortgage agreement with Videofon ("**Videofon Mortgage Agreement**"), which owns a property complex in

Voronezh, a major city in southern Russia.  (*See* Ugryumov Decl. ¶ 8.a.)  The total value of assets pledged by Videofon in favor of RFB under the Videofon Mortgage Agreement is RUB 963,301,000.  (*Id.*)  (USD 14,718,795.36 at the exchange rate of the Central Bank of Russia as of February 5, 2015.)  (*See id.*)

- On February 5, 2015 RFB also signed a suretyship agreement with Videofon, ("**Videofon Suretyship Agreement**") whereby Videofon guaranteed that TV-Alliance would fulfill its obligations under the Loan Agreement.  (*See* Ugryumov Decl. ¶ 8.c.)

The loan agreement required payment by July 30, 2015.  (Ugryumov Decl. ¶ 9.)  TV-Alliance defaulted on its obligations as a borrower; Videofon, Vitta, Technika, Vargis, and SWT likewise defaulted as collateral providers (the "**Collateral Providers**").  (*Id.* ¶¶ 9-10.)

RFB quickly undertook steps to recover the loan amount.  On October 2, 2015, RFB sent demand letters to TV-Alliance and the Collateral Providers.  (*Id.* ¶ 11).  After it became clear that neither TV-Alliance nor the Collateral Providers were going to voluntarily repay the loan, RFB initiated insolvency and debt collection proceedings against TV-Alliance and the Collateral Providers in the Russian courts.  (*Id.*)  At present, there are eight separate matters pending before the Russian courts relating to the recovery of the loan made by RFB:

- On December 21, 2015, RFB filed a bankruptcy petition with respect to TV-Alliance in the Moscow Arbitrazh Court. (*See* Ugryumov Decl., ¶ 12.)  The court granted the petition on June 9, 2016 and introduced a monitoring procedure for TV-Alliance.  (*Id.*)  A hearing is scheduled for November 21, 2016.  (*Id.*¶ 14.)  The court has accepted the bank's calculation of TV-Alliance's debt as of May 30, 2016 at RUB 1,534,209,040.57.  (*Id.*¶ 13.)[1]

- On December 24, 2015, RFB filed a debt recovery claim against Vitta in the Moscow Arbitrazh Court.  (*See* Ugryumov Decl., ¶ 17.)  The court granted the claim on April 1, 2016.  (*Id.*)  On June 29, 2016, the Ninth Appellate Court of Moscow upheld the initial decision to grant the claim.  (*Id.*)  Vitta has appealed this ruling to the cassation court, with a hearing scheduled for October 5, 2016. (*Id.*)

---

[1] The total debt amount of TV-Alliance as of 30 May 2016 is USD 23,720,101.36 (US$19,491,808.74 being the main debt, US$4,228,292.61 being the late payment penalties) at the exchange rate of the Central Bank of Russia as of June 9, 2016.  (*See* Ugryumov Decl. ¶ 13.)

- On February 10, 2016, RFB filed a debt recovery claim against SWT in the Moscow Arbitrazh Court. (*See* Ugryumov Decl., ¶ 24.)  The court has accepted the claim and a hearing is scheduled for October 20, 2016.  (*Id.*¶ 25.)

- On June 2, 2016, RFB filed a bankruptcy petition with respect to Vargis in the Moscow Arbitrazh Court. (*See* Ugryumov Decl., ¶ 20.)  The court accepted the petition in August 2016 and a hearing set for October 17, 2016.  (*Id.*)

- On June 15, 2016, RFB filed a bankruptcy petition with respect to Technika in the Kaliningrad Arbitrazh Court. (*See* Ugryumov Decl., ¶ 22.)  The court accepted the petition and a hearing was held on September 21, 2016.  (*Id.* ¶ 23.)

- On June 28, 2016, RFB filed a bankruptcy petition with respect to Videofon in the Voronezh Oblast Arbitrazh Court. (*See* Ugryumov Decl., ¶ 15.)  After a hearing in August 2016, the court granted RFB's petition, found RFB's claim justified, and introduced a monitoring procedure for Videofon with the next hearing set for December 21, 2016.  (*Id.* ¶¶ 15-16.)

- Vitta's shareholders initiated a voluntary liquidation proceeding in May 2016. (*See* Ugryumov Decl., ¶ 18.)  On July 25, 2016, RFB also initiated a lawsuit in the Moscow Arbitrazh Court requesting that the Bank be included on the list of creditors in the liquidation proceedings.  (*Id.*)  The court accepted the statement of claim on July 26, 2016 and a hearing is set for November 2, 2016.  (*Id.*)

- Another creditor of Vitta has filed a bankruptcy petition in the Moscow Arbitraz Court.  A hearing is fixed for October 11, 2016. (*See* Ugryumov Decl., ¶ 19.)  Once the court pronounces Vitta bankrupt, RFB will submit an application seeking inclusion of its claim into the register of creditors' claims.  (*Id.*)

Collectively, these eight matters are referred to in this Memorandum as the "**Russian Proceedings**."

## C.    BELOUSSOV'S RELEVANCE TO THE RUSSIAN PROCEEDINGS

Beloussov is a co-founder of the Rolsen Group.  *See* Serguei Beloussov, Executive Profile and Biography, Bloomberg, http://goo.gl/QpO42M.  Tracing Beloussov's exact ownership interest in the Rolsen Group is impossible, as the group has an extremely complex and nontransparent corporate structure, with frequent use of intermediate holding companies and nominee shareholders and commingled finances.  However, as part of its initial application for the loan instruments, the Rolsen Group represented to RFB that Mr. Beloussov was a 25%

shareholder in the group.  (*See* Bordakova Decl. ¶ 8; Raiffeisenbank Credit Review of Rolsen

Group, attached to Bordakova Decl. as Ex.1 at 1; Declaration of Marina Kolesnikova, dated

September 15, 2016 ("**Kolesnikova Decl.**") ¶ 10, attached to Kotuby Decl. as Ex. C.)  It is

evident that Beloussov does in fact own indirect shares in Videofon and in Rolsen CJSC, another

member of the group.  (*See* Extract from the Cypriot Register of Companies, attached to

Ugryomov Decl. as Ex. A-0015; Excerpt from Videofon's quarterly report, attached to

Ugryomov Decl. as Ex. A-0017 at 29–30; Kolesnikova Decl. ¶ 11.)

Moreover, Beloussov was involved in Rolsen's activities with RFB.  During negotiations

with RFB, the CFO of the Rolsen Group represented to RFB that all of the main Rolsen Group

decisions were made by the beneficial owners—like Beloussov.  (*See* Kolesnikova Decl. ¶ 14.)

In addition, in April of this year, as part of negotiations to restructure the debt, Rolsen group

management offered personal guarantees from Beloussov as collateral for a proposed

restructured loan.  (*See* Ugryumov Decl. ¶¶ 29-30; *see also* Email from Denis Skrynnik to Boris

Kirilenko dated Apr. 19, 2016, attached to Ugryumov Decl. as Ex. A-0012.)

In concurrence with the bankruptcy and debt recovery proceedings, Applicant wishes to

gather information on the corporate structure of the Rolsen Group, its assets, intragroup and

external transfers of funds, and the circumstances surrounding the default.  Applicant has

previously attempted to trace the corporate structure of the group, but has been unsuccessful due

to the group's complex, nontransparent structure.  (*See* Raiffeisenbank Credit Review of Rolsen

Group, Bordakova Decl., Ex. 1, at 1-2.)  For example, several companies within the group use

nominee shareholders, including shell corporations.  Moreover, the group does not prepare

audited reports for each company within the group, and Applicant has not been able to access

reliable financial information for all of the entities within the group.  (*Id.* at 7-8 (noting that it

was difficult to trace sales data "due to large number of trading units within the Group, inc[uding] technical SPVs, [and] constantly changing legal entities.").)

Applicant has already been provided some information to suggest that funds are capable of being transferred among the Parties to the bankruptcy litigation or even outside the Rolsen Group altogether.  Management of the Rolsen Group previously confirmed to Applicant that at least one of the guarantors, SWT, is a special purpose vehicle that can be used by the Group owners for non-Rolsen Group transactions.  (*Id.* at 8 ("we note that account of [SWT] is used not only for Rolsen Group transactions; as per management the owners of the Group could use this account in their own way").)

As a 25% beneficial owner of the Rolsen Group who is still involved in its everyday affairs, including in relation to RFB's loan to TV-Alliance, and who was involved in the post-default restructuring proposals, Beloussov should have relevant and necessary information regarding the group's structure, the allocation of funds, and the circumstances surrounding the default.

The evidence sought by Applicant can be submitted in the Russian proceedings.  In insolvency proceedings, documents can be submitted by creditors during both the supervision and liquidation phases of the proceedings, including documents to support a claim for parent company liability, and documents relating to third parties who may have assets that belong to the debtor.  (*See* Ugryumov Decl. ¶¶ 34-37.)  Further, the Arbitrazh Procedure Code does not contain a prohibition for use of evidence obtained in the course of the discovery or disclosure conducted by a means of foreign court proceedings.  (*Id.* ¶ 44.)  As a result, any evidence related to the circumstances surrounding the default or the location of the debtors' assets can be used in the current Arbitrazh proceedings. (*Id.*)  This includes testimonial evidence.

# LEGAL ARGUMENT

A.   **THE APPLICATION MEETS ALL THE STATUTORY REQUIREMENTS FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

Section 1782 allows any party with an interest in a foreign legal proceeding to apply to a district court for discovery within the district.  Specifically,

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).  Thus, a district court may issue an order pursuant to Section 1782 for discovery: (1) from "any interested person" (2) seeking evidence for use in a proceeding in a foreign or international tribunal, when (3) the person from whom discovery is sought resides or is found in the district.  *See In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007); *cert. denied*, 552 U.S. 1140 (2008), *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 262-65 (2004).[2]  At this *ex parte* stage, an applicant need only make a prima facie showing that the statutory factors are met.  *See, e.g.*, *In re Republic of Ecuador*, Case No. C-10-80225 MISC, 2010 WL 3702427, at *5 (N.D. Cal. Sept. 15, 2010); *In re Braga*, 789 F. Supp. 2d 1294, 1303 (S.D. Fla. 2011) ("There is nothing inappropriate about an ex parte application under this statute. In fact, in the Court's experience, most applications filed here in this district are submitted on an ex parte basis.").

---

[2] The location of the documents or information is not within the statutory analysis.  Indeed, the 11th Circuit has recently ruled that "the location of responsive documents and electronically stored information . . . does not establish a *per se* bar to discovery under § 1782."  *Sergeeva v. Tripleton Int'l Ltd.*, Case Nos. 15-13008 & 15-15066, 2016 WL 4435616, at *4 (11th Cir. Aug. 23, 2016).

### 1.    RFB is an "Interested Person" Under 28 U.S.C. § 1782

As the applicant, RFB is duly "interested" in all of the pending bankruptcy proceedings in Russia.  A named party in foreign proceedings "may be the most common example of [] the 'interested person[s]' who may invoke §1782."  *Intel*, 542 U.S. at 256 (stating that an interested person under § 1782 "plainly reaches beyond the universe of persons designated 'litigant,'" although there is "[n]o doubt [that] litigants are included among, and may be the most common example"); *see also In re Application of FG Wilson (Eng'g) Ltd*, No. 10-20839 Civ., 2011 WL 1114311, at *2 (S.D. Fla. Jan. 4, 2011).  RFB is a party to the foreign proceedings as it is the entity seeking payment of the loan it made to TV Alliance under the Loan Facility Agreement. *See supra* § B.  As RFB is a major creditor in a foreign bankruptcy proceeding, it is naturally "interested" in those proceedings, and specifically in uncovering the location of the assets TV Alliance is required to repay.  RFB therefore has a "reasonable interest" in obtaining judicial assistance and thus satisfies the Statute.  *Intel*, 542 U.S. at 256; s*ee also In re Application of Setraco Nigeria Ltd.*, No. 3:13-mc-16-32MCR., 2013 WL 3153902, at *2 (M.D. Fla. June 19, 2013).

### 2.    RFB Seeks Relevant Evidence "For Use In" a "Foreign Tribunal"

"The principal requirement imposed by § 1782 is that the requested discovery be for use in 'a proceeding' in which 'an adjudicative function is being exercised.'"  *In re Application of Hill*, No. M19-117 (RJH), 2005 WL 1330769, at *3 (S.D.N.Y. June 3, 2005) (citing *Lancastor Factoring*, 90 F.3d 38, 41 (2d. Cir. 1996)); *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1268-69 (11th Cir. 2014) (explaining the expansion of § 1782 discovery to include not just proceedings before conventional courts, but administrative and quasi-judicial proceedings).  Here, the documents sought will be used in the Russian courts that are presently adjudicating RFB's bankruptcy and debt collection proceedings

against TV Alliance and the Collateral Providers, making these documents "for use" in a "foreign tribunal" within the purview of Section §1782.

The Arbitrazh Courts of Moscow, Voronezh and Kaliningrad where RFB commenced bankruptcy proceedings qualify as "foreign tribunals" that are exercising an "adjudicative function."  *See Lancaster Factoring*, 90 F.3d at 42 ("[A] bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated," and therefore falls "within the intended scope of §1782.").  Several district courts have granted discovery § 1782 for matters pending before the Arbitrazh courts, which are commercial courts of first instance in Russia.  *See, e.g.*, *In re Application of Imanagement Services Ltd*, No. Civ. A 05-2311 (JAG), 2006 WL 547949 (D.N.J. Mar. 3, 2006) (granting Plaintiff's motion for discovery to be used in the Moscow Arbitrazh Court); *In re Imanagement Servs., Ltd.*, No. Misc. 05-89(FB), 2005 WL 1959702, at *7 (E.D.N.Y. Aug. 16, 2005) (same); *United Co. Rusal, PLC v. Trafigura A.G.*, No. 3:11MC17 (SRU), 2011 WL 1045532, at *1 (D. Conn. Mar. 16, 2011) (discussing the grant of discovery under § 1782 for discovery to be used in the Krasnoyarsk Arbitrazh Court); *In re Kolomoisky*, No. M19-116, 2006 WL 2404332, at *1 (S.D.N.Y. Aug. 18, 2006) (granting discovery under § 1782 for use in the Moscow City Arbitrazh Court).  There is thus no dispute that adjudicative proceedings in front of Russian national courts qualify as foreign proceedings under §1782.  *See Intel*, 542 U.S. at 257 (It is "beyond question" that conventional courts of first instance "qualify as tribunals.").

Evidence is intended "for use" in a foreign proceeding if such evidence is "relevant to the party's claim or defense" in the foreign court.  Fed. R. Civ. P. 26(b)(1); *In re Sveaas*, 249 F.R.D. 96, 106 (S.D.N.Y. 2008).  Relevance in this context is broadly construed "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue

that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978);

*see also In re Pinchuk*, No. 13-CIV-22857, 2014 WL 1745047, at*2 (S.D. Fla. Apr. 30, 2014)

(noting that "relevance is construed broadly").  "Where relevance is in doubt, the district court is

to be permissive." *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003).

The discovery sought here is highly relevant to the pending proceedings in Russia.  The

bankruptcy and debt collection proceedings have been initiated with the intent to obtain payment

from TV Alliance and the Collateral Providers, who are all part of the Rolsen Group.  Applicant

here seeks to gather  any information within Beloussov's possession on the corporate structure of

the Rolsen group, its assets, its intragroup transfers of funds, and the circumstances surrounding

the default in order to locate the assets that it is entitled to recover.  In this respect, such evidence

is "relevant" to those proceedings, and is thus discoverable. *See In re Application of Mesa Power

Grp., LLC*, 878 F. Supp. 2d 1296, 1305 (S.D. Fla. 2012); *In re Application of Hill*, 2005 WL

1330769, at *5.

The Court need not determine whether the evidence would be admissible in Russian

proceedings, as § 1782(a) determinations are not restricted by foreign discovery rules. *Intel*, 542

U.S. at 260; *In re Application of FG Wilson (Eng'g) Ltd.*, 2011 WL 1114311, at *4.  U.S. courts

have found that a party to a litigation can seek evidence for proceedings in Arbitrazh Courts in

Russia regardless of whether such evidence would be admissible in Russian proceedings, so long

as the party intended to offer the evidence to a foreign court. *See In re Application of

Imanagement Services Ltd*, 2006 WL 547949 (granting a motion for discovery in an action for

fraud against Bank of New York Mellon commenced in the Moscow City Arbitrazh Court where

party sought documents and deposition testimony from nonparty witnesses residing in the United

States, amongst them BNY's Chairman and Chief Executive Officer).  In fact, these bankruptcy

proceedings are of the same nature as those underlying the successful application for Section 1782 discovery in *In re Hill*.  In that case, Plaintiffs sought and received discovery from Ernst & Young USA, who audited insolvent companies, to obtain information on the financial condition of debtor companies in liquidation proceedings, including "the debtors' accounting practices, cash flow, corporate governance, management integrity and the genuineness of certain transactions".  *In re Application of Hill,* 2005 WL 1330769, at *5.  Here, RFB's motion to obtain evidence from Beloussov on the location and distribution of assets amongst the many companies of the Rolsen group who have yet to pay RFB is highly relevant to the foreign bankruptcy proceedings.

### 3.    Beloussov Can be "Found" in this District

RFB makes its application for discovery from Beloussov in this district because Beloussov is "found" or "resident" here.  *See* 28 U.S.C. § 1782(a); *In re Application of FG Wilson Ltd.*, 2011 WL 1114311, at *2 ("Lopez resides in the Southern District of Florida because he lives in Doral, Florida").  Upon information and belief, Beloussov resides in this district. Beloussov owns a house and leased a car at an address in Boca Raton, Florida.  (*See* Car Lease Information and License Plate Identification Number; Palm Beach County Property Appraisal, attached to Kotuby Decl. as Exs. E, F.).

**B.    ALL DISCRETIONARY FACTORS OF SECTION 1782 WEIGH IN FAVOR OF PERMITTING THE DISCOVERY RFB SEEKS**

Where the statutory requirements of Section 1782 are met, the Court has discretion to order the requested discovery.  *See Intel*, 542 U.S. at 255; *In re Clerici*, 481 F.3d at 1331.  In exercising this discretion, the Court should consider:  (1) whether the person from whom discovery is sought is a participant in the relevant foreign proceeding who is subject to discovery in that jurisdiction; (2) the nature of the foreign tribunal, the character of the proceedings

underway, and the receptivity of the foreign government, court or agency to assistance from U.S. federal courts; (3) whether the application conceals an attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States; and (4) whether the discovery sought is unduly intrusive or burdensome. *Intel*, 542 U.S at 264–65; *see also In re Clerici*, 481 F.3d at 1329-30. In engaging in this analysis, courts should look to the statute's twin aims, *i.e.*, to "provid[e] efficient [means of] assistance to participants in international litigation . . . and [to] encourage[e] foreign countries by example to provide similar [means of] assistance." *Intel*, 542 U.S. at 252; *see also In re Pimenta*, 942 F. Supp. 2d 1282, 1288 (S.D. Fla. 2013).

### 1.    Beloussov is Not a Participant in the Russian Litigation

The primary objective of Section 1782 is "to assist foreign tribunals in obtaining relevant information that . . . they cannot obtain under their own laws." *Intel*, 542 U.S. at 262; *see also In re Clerici*, 481 F.3d at 1331. That is precisely why courts have held that Section 1782 discovery is particularly warranted when the person from whom discovery is sought is not a participant in the corresponding foreign litigation or proceeding. *See Intel*, 542 U.S. at 264; *see also In re Chevron*, 753 F. Supp. 2d 536, 539 (D. Md. 2010) (stating that where "neither respondents . . . are parties to the [foreign] [l]itigation . . . this factor is completely satisfied"). In those circumstances, that person (and the relevant information in his possession) may fall beyond the reach of the foreign court. Because Beloussov is not a party to or participant in the Russian Proceedings, and because there is no general opportunity for third party discovery in the Russian Court proceedings, (*see* Ugryumov Decl., ¶ 45 (noting that the only third party discovery available is a request for specific documents)), the requested discovery is warranted.

### 2.       The Russian Courts Are Receptive to Discovery Pursuant to Section 1782

"Receptivity" is not a question of whether the particular foreign *court* would permit

discovery in this or any other particular case; instead, it is an inquiry into how a foreign *legal*

*system* "might respond to § 1782 assistance from a United States court." *In re OOO*

*Promnefstroy*, No. M 19–99 (RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009); *see also*

*In re Bayer AG*, 146 F.3d 188, 196 (3d Cir. June 9, 1998).   The burden is on the party opposing

Section 1782 discovery to prove lack of receptivity, *see Euromepa S.A. v. R. Esmerian, Inc.*, 51

F.3d 1095, 1100 (2d Cir. 1995), and the burden is a heavy one.   Only a "clear directive" from the

foreign legal system that it "would reject evidence" produced in the United States would suffice.

*Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010); *see also In re Sarrio*

*S.A.*, 173 F.R.D. 190, 197, n.19 (S.D. Tex. 1995) (requiring "authoritative proof" in the form of

"judicial, executive, or legislative declarations that specifically address the use of evidence

gathered under foreign procedures"); *cf. Intel*, 542 U.S. at 265 (holding that a § 1782 application

could be granted despite the fact that "[t]he European Commission [hearing the underlying

matter] has stated in *amicus curiae* briefs to this Court that it does not need or want the District

Court's assistance").

Russian courts are generally receptive to Section 1782 discovery.  *See, e.g.,  In re*

*Kolomoisky*, No. M 19-116, 2006 WL 2404332, at *2 (S.D.N.Y. Aug. 18, 2006); *In re*

*Application of Imanagement Servs. Ltd.*, 2006 WL 547949, at *4.[3]   In the least, no "clear

---

[3] To be sure, receptivity is not the same as eventual admissibility.  There is no requirement that the discovery sought in a Section 1782 proceeding be admissible in the foreign tribunal under its laws and procedures. *See In re Request For Assistant From Ministry of Legal Affairs of Trinidad and Tobago*, 117 F.R.D. 177 (S.D. Fla. 1987) ("[A] district court is not to predict the admissibility of the discovered evidence in foreign tribunals.") (quoting *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 137 (3d Cir. 1985)); *Fleischmann v. McDonalds*, 466 F. Supp. 2d 1020, 1027 (N.D. Ill. 2006) ("[N]o lower court has required a foreign-admissibility rule and some courts have specifically rejected one.").  In other words, this Court need not assess the admissibility of the evidence sought under Russian law before granting the requested discovery.  That is a task for the Russian court, after the discovery is taken.

directive" or "authoritative proof" has come from Russia that might suggest limitations on the use of the evidence taken here in cases pending there.  *See also, e.g.*, *In re Application of FG Wilson (Eng'g) Ltd.*, 2011 WL 1114311, at *4 ("The record does not demonstrate that Columbia would not allow the discovery that FG Wilson seeks from Lopez.  This factor favors FG Wilson.").  Thus, the second discretionary factor weighs in favor of RFB's application.

### 3.    RFB's Application Does Not Represent an Effort to Circumvent Foreign Proof-Gathering Restrictions

The Supreme Court's third *Intel* factor, whether the applicant is attempting to "circumvent foreign proof-gathering restrictions," is meant to weed out bad faith misuse of the process.  *Minatec Fin. S.A.R.L. v. SI Group Inc.*, Civ. No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008).  This action is a good faith effort to obtain evidence located in this district from a party who resides in this district and who is not before the foreign court.  Absent a "persuasive showing" that a section 1782 application "is actively seeking to circumvent the foreign tribunal's discovery methods and restrictions . . . this factor does not counsel against section 1782 relief."  *In re Application of Mesa Power Grp., LLC*, 878 F. Supp. 2d at 1305.  The Arbitrazh courts have neither been requested to take, nor have taken any action to preclude Applicant from seeking documents or testimony from Respondent (or any third parties outside their jurisdiction).  (*See* Ugryumov Decl., ¶ 44.)  Consequently, the Petition cannot be seen as an effort to circumvent the foreign tribunal's proof-gathering restrictions, let alone bad-faith efforts to do so.  As such, this factor weights in favor of granting the Petition.

### 4.    The Discovery RFB Seeks is Neither Intrusive nor Unduly Burdensome

RFB's application for discovery from Beloussov is narrowly and appropriately tailored to minimize any undue intrusion or burden and is proportional to the needs of the case.  A court is to determine whether the discovery requests encompassed in the application are "sufficiently

tailored to the litigation issues for which production is sought." *In re Gemeinschaftspraxis*, No. Civ. M19-88, 2006 WL 3844464, at *8 (S.D.N.Y. Dec. 29, 2006); *see also Fleischmann,* 466 F. Supp. 2d at 1032–33.  The court "consider[s] the importance of the issues at stake in the action, the amount in controversy, the parties relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  As demonstrated above, *see supra* § A.2., the requests in the attached subpoenas are limited to those matters that are directly relevant to the Russian proceedings and that are likely to be in Beloussov's possession, custody or control.  Consequently, this final discretionary factor in the *Intel* analysis supports RFB's application.

## CONCLUSION

RFB's application for Section 1782 discovery satisfies all of the statutory requirements and is supported by each of the discretionary factors to be considered by the Court.  For the foregoing reasons, RFB requests that this Court grant this application and issue the requested subpoenas.

DATED: September [27], 2016

Respectfully submitted,

*s/Carlos F. Concepción*

Carlos F. Concepción
Florida State Bar No. 386730
JONES DAY
600 Brickell Avenue
Brickell World Plaza
Suite 3300
Miami, FL 33131
Telephone:  305.714.9700
Facsimile:  305.714.9799
Email: cconcepcion@jonesday.com


Charles T. Kotuby Jr. (*pro hac vice* pending)
D.C. Bar No. 492416
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C.  20001-2113
Telephone:  (202) 879-3939
Facsimile:   (202) 626-1700
Email: ctkotubyjr@jonesday.com

*Attorneys for Raiffeisen Bank International AG*

## **<u>SERVICE NOT REQUIRED</u>**

Pursuant to Local Rule 5.4(d), Joint Stock Company Raiffeisenbank states that service upon Serguei Beloussov is not required.  Section 1782 applications are typically "received and appropriate action taken . . . ex parte," with any issues raised and resolved after a subpoena has been authorized and issued.  *In re Letters Rogatory from Tokyo Dist.*, 539 F.2d 1216, 1219 (9th Cir. 1976) (emphasis added); *In re Braga*, 789 F. Supp. 2d. 1294, 1303 (S.D. Fla. 2011) (noting that most applications for discovery under 28 U.S.C. § 1782 a submitted *ex parte*).

*/s/Carlos F. Concepción*
Carlos F. Concepcion
Florida State Bar No. 386730